May it please the court, my name is Dan Siegel and I represent the appellant Brandon Tann. With the permission of the court I request three minutes for rebuttal. There are three reasons why this court should be guided by the panel decision in Miller rather than the panel decision in Gricko. First, collateral consequences were never made an issue in Gricko. Second, the Supreme Court standard on collateral consequences was not cited in Gricko because it didn't become an issue. And third, we would meet that Supreme Court standard because there does exist at least a potential for adverse collateral consequences arising from the second conviction. Turning to the first point, Gricko was a tax case where collateral consequences of the extra conviction was never made an issue. Miller, by contrast, was a child pornography case where the potential collateral consequences were much more severe. So the presence of collateral consequences is a basis for distinguishing Miller from Gricko on the facts. But turning to the second point, because collateral consequences were never made an issue in Gricko, the Gricko panel never had occasion to cite the Supreme Court standard on collateral consequences. Now that standard... We say that. I understand what you're saying. I mean, if you look at the briefs, I mean, I agree it doesn't appear in the opinion. That is true. We can only... the litigants are going to be guided by what's in the published cases. So all I can say is that the Rutledge case, which is the controlling precedent from the Supreme Court, wasn't cited by Gricko. Not because... and I don't think Judge Alito would miss an issue if it had been raised. I don't think he would have overlooked the Supreme Court decision. And I think that it most likely arises from the fact that collateral consequences simply weren't made an issue. But let's go to the third point, the controlling legal standard. The Supreme Court doesn't require proof of a likelihood of adverse collateral consequences. They just require a potential of adverse collateral consequences. And even if all of the 50 states went back to a system of purely discretionary sentencing, the existence of the second conviction in this case, when a judge reads it in a pre-sentence report, at least has the potential of adversely affecting the defendant at a future sentencing hearing. Now, to be sure, we're going to warn Mr. Tan about the dangers of recidivism, but it's been my unhappy experience that there is a potential for it to happen. Does the collateral consequence alone is sufficient to establish plain error? Yes, Your Honor, and that would... the Miller decision essentially says, look, we've got the fines, but we've also got these potential collateral consequences. So that's the combination that's a little different than Gricko. Gricko was just dealing with the fines and never dealt with the collateral. Is that enough to affect the fairness, the integrity, and the reputation of public proceedings under plain error review? That is our argument. That is what the Miller court found. Certainly, if the statute only calls for one conviction and two convictions were entered, and a person at some later time is going to be looking at additional time in prison because of that, that is something that affects the reputation of the court. And in this case, we're only asking for a limited remand to correct the judgment. It's not like a plain error case where you're asking for a new trial or some serious burden on the criminal justice system. So... What are the specific collateral consequences that... well, potential collateral consequences that your particular client faces here? One of the collateral consequences, and it's in the appendix at page four, where the court imposed supervised release. The court imposed two terms of supervised release. Three years of supervised release on each count. But the court did it concurrently. However, if Mr. Tan were to get in trouble after getting back to jail and he came before a court, there is at least the potential that the court could say, okay, you've got three years on one, three years on the other. We're going to stack them together and you're looking at six years in jail. So that's a potential collateral consequence. But let's look at what the Supreme Court said about collateral consequences in the Rutledge case. They talked, yes, about habitual offender standards, but they also talked about the potential for adversely affecting eligibility for parole. They talked about the potential that the extra conviction could be used to impeach the defendant's credibility at a future trial. They talked even about the potential social stigma. So when the Supreme Court talked about adverse collateral consequences, they were casting a fairly broad net. The sentences here were run concurrently. That is correct, Your Honor. So what is the precise remedy that you're seeking if this case goes back to the district court? We are asking for the remedy which was applied in Miller, which is instructions to resentence the defendant and to, with instructions to vacate one of the two convictions. That is that a notation can be made on the official court record that conviction on count two merges with count one, but there should only be one conviction entered on the record. There are no further questions. No, I actually do. All right. Well, we've got Gricko and we've got Miller. Right. Now, how do we assume that we find that they conflict irreparably? They just are two conflicting opinions. What do we do with that? Well, if the government is right that there is an irreparable conflict between the two opinions, then the Third Circuit rule would require that you go with the earlier opinion. However, the Third Circuit, the case law that I cited also says that where you can find a principle basis for distinguishing the two cases, that you should try to see if it's present. Wait a second. Is that right? Aren't we obligated by our internal rules to follow the earlier case? Oh, certainly. You always find a principle difference between two cases. You would certainly, if there were a future case where it doesn't have to be a tax case. It could be an accounting error. It could be some minor offense or some offense that doesn't show malice, that doesn't show a potential for violence. And the person got two special assessments instead of one special assessment. Gricko would probably control that case because you couldn't distinguish Gricko on the facts. However, this case presents a case that's closer to the Miller case because the convictions in this case for firearms do have a potential to affect a person in the future much more than a tax prosecution. So that's the principle basis for distinguishing the two on the facts. And yes, Your Honor. If there is a Supreme Court case that directly controls this case that was decided before Gricko, can we simply rely on a Supreme Court case? I'm going to tell you candidly the problem that exists with relying on the Supreme Court case alone. The Rutledge decision was a decision where the defendant did not preserve his objection in the district court. In fact, I was surprised to read in the Rutledge decision the issue was raised in a pro se brief by the defendant himself. So it was a harmless error review? So it would have been a plain error case. So it would be applicable. However, the Supreme Court in Rutledge never applied the plain error standard. They didn't even articulate the plain error standard. What they were doing in Rutledge was they were using it as a vehicle to say that the drug conspiracy and that was a lesser included offense of continuing criminal enterprise and therefore courts of the United States, please don't enter separate judgments for them. They were unanimous on that point. So if you were to say, well, we're going to overrule Gricko based upon Rutledge, then there's a real titanic question that goes very possibly to the Supreme Court. And in a battle between Judge Alito, now Justice Alito, and Judge Pollack, that's a very significant battle. But if I may, I've sort of learned over the years that it's best to be satisfied with half a loaf rather than a whole loaf if it's possible. There is a way to, in a principled reason way, to distinguish the Gricko and Miller decision. Our facts are closer to Miller. Our facts are closer than Miller. Miller has convictions with a more serious potential. You can recognize that Gricko is a narrow plain error case which says when it's not a violent offense and it's not likely to have that sort of an influence in the future that the two collateral, the two special assessments aren't enough to bring it up. So there is a principled basis for distinguishing Gricko on the facts. Roberts. Good. Thank you, Mr. Siegel. Thank you. Judge Allister, any questions? No questions. Thank you, Mr. Siegel. May it please the Court. Sean Wee for the United States. If I may, I would like to proceed directly to the argument that the defense raised, or argument as well as in his reply brief, namely that Gricko is distinguishable from the facts at bar by the idea that there's a potential for those collateral consequences that weren't present in Gricko. The defendant cites to two jurisdictions wherein, I believe it's Michigan and North Carolina, wherein those jurisdictions the defendant would essentially have an extra strike on his record under certain recidivist statutes. Now, the important thing to recognize, first of all, is that of the two jurisdictions he cites, only one of them would there be this potential, and that would be Michigan. He cites a case from North Carolina. That's referring actually to a habitual misdemeanor assault statute. If you look at the recidivist statute in North Carolina, it has a similar episode-type test that a lot of other jurisdictions would employ, namely that- Mr. Weedy, isn't it true, did I pronounce your name correctly? Oh, Weed, Your Honor. Weed. Isn't it true, though, in this case, that Mr. Pan stands convicted of two separate offenses? That's correct, Your Honor. But the statute doesn't read that way. The statute says you can be convicted for possession of a firearm or ammunition, and that seems to me one of the essences of the defense. You can only stand convicted of one judgment under that statute. Your Honor, you're absolutely correct. And the government concedes in this case the first two prongs of Alano, namely that there was an error below. Essentially, under this court's case of Marino, which I believe is back in 1982, underneath the predecessor statute to 922G1-1202A, under that rationale, as well as the fact that all the other circuits that have addressed the issue have come to the same conclusion, Your Honor, you're absolutely right. There should be only one conviction that lies here. The question before the court is whether or not that amounts to plain error by virtue of affecting the defendant's substantial rights. And, Your Honor, obviously the government's position, by virtue of the briefs, is that under Grieco, that does not affect the defendant's substantial rights. Why not? Well, yeah. Because the effect that we see from the defendant, what I believe the Grieco court said, the immediate practical effects that the defendant is seeing here is that he has another conviction on his record. He has... Isn't that a substantial effect? Well, Your Honor, Grieco says no. Your Honor, Grieco says no. I mean, by virtue of the fact that, albeit Mr. Siegel, you know, points out that there are tax offenses in Grieco. However, they're both felonies, just like here. So the argument of, sure, is that enough? Under plain error review, does that affect substantial rights when you have two concurrent sentences for both felonies? And, in fact, Grieco, the case was that there were three extra convictions. By virtue of the fact that there were three different charges, both for the tax fraud as well as filing false tax returns, that defendant had three extra felonies on his record. And yet, the Grieco court said, this does not affect the defendant's substantial rights. Your Honor, if I may, going back to, I believe, what was the defense's point, which is, well, look, here there's going to be all these potential collateral consequences. Well, Mr. Weed, what about the assessment? I mean, clearly, he shouldn't have had $200 fines. That's only $100, I suppose. But, Your Honor, you're, again, absolutely correct. He shouldn't have to pay that, should he? Well, I mean, again, going back to what Grieco says, Grieco says that, you know, at the end of the day, he has this extra special assessment. In fact, in Grieco, it was more than $100. It was $700. And the Grieco court said, when the issue was before it, that's not enough. Doesn't affect the defendant's substantial rights. But going back to, again, what the defense's argument was here, which is, look, my defendant, my client, has all these potential collateral consequences that are going to ensue. And, Your Honor, the government took the liberty of looking at the ALR provision, which he cites to. And, in fact, there's another jurisdiction besides Michigan, and that would be Iowa, where the same potential problem could lie. But the problem there is, is that these statutes, that these recidivist statutes that the defendant's talking about, they predicate themselves on felonies. There's nothing unique to the fact that it's a, you know, prior felony possession of a firearm. It's their prior felonies that act as the predicate offenses for purposes of the recidivist statute. So that does not distinguish his case from Grieco's, because the fact is, is that the defendants in Grieco, they also have more felonies on their record. Those felonies would also serve as predicates under the statute. I believe, to quote the Iowa recidivist statute at Iowa code annotated 902.8, a habitual person is any person convicted who has twice before been convicted of any felony in a court of this or any other state or of the United States. So the argument is, is that factually, it's simply not distinguishable from the facts in Grieco. So supposing, supposing Mr. Siegel represented Mr. Tan in this case at the time of the plea. Hypothetically speaking, Mr. Siegel says, the statute charges my client with possession of a firearm or ammunition. I'll plead guilty to the possession of a weapon charge. Would he be correct in arguing that his client can only be convicted of one offense? Yeah, he would be correct in arguing that there, in the end, there can only be one conviction for his offense. If I may be allowed to explain it. This is not, I believe. All right, supposing he said, I plead guilty to both, but I asked the court to enter one judgment and conviction for one offense. Would he be correct? Yes. Well, then why can't we send this case back to correct that error? Because, you know, the government's position is, is that you should argue from, the government's position is from. Well, it seems like if he would be correct in asking for conviction or a judgment that reflects only one conviction, that didn't occur in this case. Why can't we correct that error? Your Honor, simply going back to the Alano standard under 52B. Alano says that essentially this court, there have to be three elements met before the court can do that. One, there has to be an error. The error has to be clear and it has to affect the defendant's substantial rights. So if this court agrees with the government in this case, that in fact, Grieco is not distinguishable from the case so far, then Grieco controls the substantial rights. Being convicted of two offenses under a statute that really only requires one conviction affects substantial rights? Your Honor, that's what Grieco says and that's why the government cites it. Can we turn to what we talked to your adversary about, Mr. Weed? And that is, how do we deal with these two? Now, your position is, I guess, that they do directly. They're at loggerheads. There's no way around it, right? That's correct, Your Honor. In your view, the rule is, we go with Grieco because we have to, aren't we? Your Honor, I mean, and I'm to be quite candid at the court, I tried to find some way to analyze these two cases as not being completely butting heads. Well, in fact, not only Miller, but Jackson, the case that Miller cites too, particularly for the substantial rights problem. And, Your Honor, in a situation like this where clearly they are at odds with each other, IOP 9.1 controls. So your view is that only the full court could change the jurisprudence? Correct, Your Honor. Okay. Thank you, Mr. Reardon. Thank you, Your Honor. Thank you. And you too, Mr. Huff. Thank you. We'll take the case under advisory. I think he had, he reserved three minutes. Oh, you did. He reserved three minutes. I'll take that back. Just to make one final point, to reemphasize two points. First, that we do find a factual distinction between the Grieco case and the Miller case in that the Grieco case did not deal with the collateral consequences of the prior, of the entry of two convictions. Your view is that we can simply, we can basically sidestep Grieco. We can sidestep Grieco. Is that your view? Well, no, no, no. I think credit has to be given to all the precedents of the court. However, if there's a factual distinction between the two, then that factual distinction must be taken into account in applying the rule of law. Not only, I mean, collateral consequences weren't discussed in Grieco. The phrase collateral consequences wasn't used in Grieco. The Supreme Court decision wasn't cited in Grieco. So the basis for fairly distinguishing the two is the fact that the second case deals with entry of two convictions, which are of a different sort and have a greater potential for adverse collateral consequences. And the second basis for distinguishing it is that the text of the Grieco decision doesn't affirmatively reflect that the issue regarding the impact of collateral consequences was made an issue in the Grieco case. So that's a second basis for distinguishing it. And the other point I just wish to reaffirm, reemphasize a point that he does have these two sentences for supervised release revocation and that the judge could at a future sentencing hearing stack those two on top of each other as a result of these two convictions. So there is a potential collateral consequence even within the federal system. But let me ask you a question. Your adversary pointed out that only in two states is this recidivist issue even relevant. How do you react to that? So far as my research was able to turn up looking through ALR and looking through the cases that they cited, I was only able to find two jurisdictions which seemed to fit. But I can't account for how all the different 50 states are they going to say, is this a violent felony? Is this a not violent felony? The fact that he had the bullets in his pocket rather than in the gun, is that two separate incidents or one separate incident? So I can't predict how each of the 50 states is going to analyze these facts and these convictions under their particular recidivist statutes or even at a particular sentencing hearing. All I can tell you is that there is a potential for adverse consequences based upon the trends in the law and based upon the simple fact that if a judge in a state sees two convictions, he might treat this defendant more seriously. We hope he doesn't do another offense. We're going to warn him against it, but we have to be aware of the potential. Thank you. Thank you, Mr. Siegel. I'll take the case under advisement. Judge Althusser, can we continue? Absolutely, it's fine. Thank you very much.